UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:23-CV-00002-RGJ-HBB

**ESTATE OF JEFFREY K. ECKERT**                                            **PLAINTIFF**

**VS.**

**AUTO-OWNERS INSURANCE COMPANY**                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Auto-Owners Insurance Company's motion to enforce settlement (DN 47). Plaintiff Estate of Jeffrey K. Eckert has not filed a Response. The undersigned conducted an evidentiary hearing on July 8, 2025, at which James Barton Denham appeared as counsel for the Plaintiff as well as a witness, as did Sherry Kane, Administratrix of the Estate of Jeffrey Eckert. David K. Barnes appeared on behalf of the Defendant. As ruling on the motion represents a disposition of the Plaintiff's claims, the undersigned proceeds by way of Report and Recommendation (*See* Fed. R. Civ. P. 72(b)(1)).

### Nature of the Case

Auto-Owners issued a homeowners insurance policy to Jeffrey K. Eckert and his wife, Jennifer Eckert. Their house was destroyed by a tornado and, tragically, both Mr. and Mrs. Eckert perished in the storm as well. The Estate represents Mr. Eckert's interest in the policy through Administratrix Sherry L. Kane. The Estate initiated this litigation in Hopkins Circuit Court, alleging that the insured property had been damaged by a tornado and Auto-Owners had failed to pay benefits due under the policy (DN 1-2, pp. 2-5). The action was removed to this Court under

diversity of citizenship (DN 1). The estate of Mrs. Eckert, although a co-insured under the policy, is not a party to this action.

Hearings Related to Settlement Issues

On November 6, 2024, the undersigned conducted a telephonic status conference in this case. Mr. Denham participated on behalf of the Estate and Mr. Barnes participated on behalf of Auto-Owners. Counsel advised the undersigned that they had reached a settlement in the matter, were working on a settlement agreement, and anticipated tendering an agreed order of dismissal (DN 37). The Court entered an Order dismissing the case without prejudice and directing the parties to submit an agreed order of dismissal within forty-five days (DN 38).

The parties subsequently contacted the undersigned and advised that they were encountering difficulty in finalizing the settlement agreement. On December 20, 2024, the undersigned conducted a telephonic status conference with Messrs. Denham and Barnes and was advised that the Administratrix, Ms. Kane, had raised issues related to finalizing the settlement. Consequently, the undersigned scheduled a follow-up video conference and directed that Ms. Kane participate as well as counsel (DN 39). The undersigned conducted the video conference on December 30, 2024, in which Messrs. Denham and Barnes and Ms. Kane participated (DN 40). Ms. Kane addressed issues relating to terms in the proposed release. The undersigned directed the parties to continue discussions regarding the terms of the release, and scheduled another video hearing for January 15, 2025 (*Id.*). Messrs. Denham and Barnes and Ms. Kane participated in this video hearing (DN 41). Ms. Kane had prepared a proposal for modification of the settlement agreement, however Auto-Owners had insufficient time to review and evaluate it. The undersigned directed the parties to either resolve the dispute over the terms of settlement no later than February

17, 2025 (*Id.*).  Otherwise, Auto-Owners was to file a motion to enforce the settlement no later than March 3, 2025 (*Id.*).  This motion follows.

## Auto-Owners' Motion

Prior to this litigation, Auto-Owners initially communicated about the claim with Amy Blades, who advised she was Jennifer Eckert's daughter (DN 47-1, p. 2) and Auto-Owners made an offer of settlement (*Id.* at p. 3).  Auto-Owners states that it made the offer even though it has a defense against any obligation to pay on the contents claim because no sworn proof of loss has been submitted to it, as required by the policy (*Id.*).  As Auto-Owners was nearing completion of resolving the claim, Ms. Blades advised it that she only represented Jennifer Eckert's estate, and Jeffrey Eckert's estate was represented by Ms. Kane (*Id.*).  Auto-Owners subsequently included Mr. Eckert's estate in the negotiations and extended an offer of $268,145.55 to settle the claims of both estates (*Id.* at p. 5).  Auto-Owners extended the offer by e-mail to Mr. Denham on behalf of Mr. Eckert's estate, and with the understanding that he had "secured the authority of counsel for the estate of Jennifer Eckert to engage in these negotiations and attempt to resolve this matter on a global basis, to include both estate's interests in this matter" (DN 47-4, p. 1).  Mr. Denham responded by e-mail "we are thankfully settled on the Eckert matter!" (DN 47-5) and subsequently provided instructions on payment (DN 47-6).

On December 5, 2024, Auto-Owners' counsel sent Mr. Denham a Policyholder Release and Indemnity Agreement setting forth the terms of the settlement and drafted for the signatures of the representatives of both estates (DN 47-7).  The next day Mr. Denham responded by e-mail "This is a very well written and good-looking release" and instructed a member of his firm to "please get this executed." (DN 47-8).  Around the same time, Auto-Owners also sent the Policyholder Release and Indemnity Agreement to counsel representing the estate of Jennifer Eckert, which Ms.

3

Blades, as administratrix, executed on behalf of Mrs. Eckert's estate (DN 47-9). Ms. Kane, however, refused to execute the agreement on behalf of Jeffrey Eckert's Estate. In accordance with the Court's instructions, the parties engaged in discussions to identify and address Ms. Kane's concerns. Ultimately Auto-Owners agreed to remove a confidentiality clause (DN 47-12, p. 1). The issue of indemnification, whereby the Estate would indemnify Auto-Owners as to any potential claims that might arise from remedial work on repairs on the insured premises, remains a sticking point.

Auto-Owners moves the Court to enforce the settlement with Jeffrey Eckert's Estate (DN 47). It notes that settlement agreements are contractual in nature, and in this instance the negotiations between the parties satisfied all the elements necessary to a binding contract, namely offer, acceptance, specification of terms, and consideration (DN 47-1, p. 10). Auto-Owners asserts that Mr. Denham's acceptance of the offer of settlement was with express authority to do so as the attorney representing the Estate (*Id.* at pp. 13-15). Even were this not the case, Auto-Owners argues in the alternative that it relied upon the agreement to its detriment, such that the agreement cannot now be unwound (*Id.* at pp. 16-17).

Discussion

At the evidentiary hearing Ms. Kane testified that she approved the amount of the settlement, but there was no discussion between herself and Mr. Denham as to any specific terms of settlement. In particular there was no discussion of whether the settlement included an agreement to indemnify Auto-Owner from any other claims against the policy[1], and she only

---

[1] The Policyholder Release and Indemnity Agreement provides in pertinent part:
> Claimants further agree to indemnify and hold harmless Auto-Owners of and from any and all claims, suits, third-party claims, cross-claims, liens, subrogation claims or suits, or any other actions or causes of action, known or unknown, presently or at any future time made by said Claimants, or any other person, corporation, or entity for any claims, actions or causes of action for loss, repair costs, replacement costs, payments or damages of any nature, as set forth above and/or arising from arising from said property damage loss under said Auto- Owners Insurance Company, policy number

4

learned of that condition when Mr. Denham forwarded the release and settlement agreement to her. Mr. Denham testified that he did review the tendered release and settlement agreement, found it acceptable, and forwarded it to Ms. Kane with a recommendation that she execute it in finalization of the settlement. He also noted that he is not a party to the litigation and it was ultimately up to Ms. Kane to decide whether to accept his recommendation regarding the terms of the settlement.

As Auto-Owners has observed, "settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law." *Vanderaa v. Bruce*, No. 2:20-CV-177 (WOB-CJS), 2022 U.S. Dist. LEXIS 137764, at *4-5 (E.D. Ky. Aug. 3, 2022) (quoting *Smith v. ABN AMRO Mortg. Grp., Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011)). "The elements of a contract are: offer and acceptance, full and complete terms, and consideration." *Collins v. Ky. Lottery Corp.,* 399 S.W.3d 449, 455 (Ky. App. 2012). Auto-Owners extended a joint offer of settlement to the estates for an amount certain in release of their claims under the policy, and the estates, through counsel, accepted the offer. However the contract for settlement included terms not presented or agreed to at that point. In general, a contractual offer must contain "the essential and material terms of the proposed contract and the offeree must agree thereto so that the obligations of the one and the counter obligations of the other will be mutually binding, which is but a statement of the fundamental rule underlying all contracts." *Hopkins v. Phoenix Fire Ins. Co.*, 254 S.W. 1041, 1042 (Ky. 1923). Those "essential and material terms" were not proposed until Auto-Owners submitted the Policyholder Release and Indemnity Agreement, which contained, among other terms, a requirement that the estates indemnify it.

---

53-601-155-00, and including, but not limited to, those claims which were the subject matter of certain litigation between the parties styled Estate of Jeffey [sic] Eckert v. Auto-Owners Insurance Company, pending in the United States District Court for the Western District of Kentucky at Owensboro Division, Civil Action No: 4:23 cv-00002 RGJ, and any and all claims which were made or which could have been made by Claimants in said litigation.

(DN 47-7, p. 6).

The Kentucky Supreme Court considered a similar case in *Frear v. P.T.A. Indus.*, 103 S.W.3d 99 (Ky. 2003). In *Frear*, the parties entered into an agreement for settlement and release of claims. The plaintiff subsequently refused to execute an agreement which contained an indemnity provision.

> "Release" and "indemnity" are related, but, nevertheless distinct, legal concepts. "A release is a private agreement amongst parties which gives up or abandons a claim or right to the person against whom the claim exists or the right is to be enforced or exercised. In other words, a release is a discharge of a claim or obligation and surrender of a claimant's right to prosecute a cause of action." Indemnity, on the other hand, is "a duty to make good any loss, damage, or liability incurred by another." Thus, "[a] 'release' and 'indemnity' are distinguishable in that a 'release' extinguishes a claim or cause of action, whereas an 'indemnity' arises from a promise by the indemnitor to safeguard or hold harmless a party against an existing or future loss, liability, or both." In recognition of the distinct legal concepts, we hold that an agreement to sign "a release" contemplates only a release from liability and not indemnification from third party claims.

*Id.* at 107 (quoting 66 AM. JUR. 2D *Release* § 1 (2001) and BLACK'S LAW DICTIONARY 772 (7th ed. 1999)). The testimony at the hearing was that while Mr. Denham responded to Mr. Barnes that the tendered agreement was a "very well written and good-looking release" he was not authorized to accept the terms on behalf of the estate and only recommended that his client accept it. "The law is clear that express client authority must be had to enter into a settlement agreement, and apparent authority is insufficient. Where no express authority to settle exists, a settlement cannot bind the client." *Jago v. Special Needs Home Health Care*, 190 S.W.3d 352, 353 (Ky. App. 2006). "With respect to compromise or settlement of a claim, final decision-making authority rests with the client." *Clark v. Burden*, 917 S.W.2d 574, 575 (Ky. 1996). The undersigned concludes that there was no meeting of the minds on the full terms of the settlement and that in agreeing to the amount, Mr. Eckert's estate only agreed to *release* Auto-Owners, not to *indemnify* it, and cannot be compelled to do so.

6

Auto-Owners also argues that the settlement is enforceable because of its own and Jennifer Eckert's Estate's substantial adverse reliance on what it perceives as Mr. Eckert's Estate's acceptance of the settlement offer. Auto-Owners cites *Cisney v. Cabinet for Health and Family Services*, No. 2019-CA-000604-MR, 2020 Ky. App. Unpub. LEXIS 248 (Ky. App. April 10, 2020) and *Clark, supra,* for the proposition that, even where an attorney may not be cloaked with actual authority to agree to a settlement, the client may nonetheless be bound by the agreement on an equitable basis where "third parties who may be dealing with such attorneys would be substantially and adversely affected by unauthorized attorney settlements . . . ." *Cisney*, 2020 Ky. App. Unpub. LEXIS 248 at *5.

As an initial point, Mrs. Eckert's Estate is not a party to this action, nor does Auto-Owners represent its interests. To the contrary, Mrs. Eckert's estate is adversarial to Auto-Owners. The undersigned concludes that Auto-Owners lacks standing to advocate on that Estate's behalf for enforcing the settlement. Turning to Auto-Owner's argument that it has detrimentally relied upon an agreement for settlement, it contends:

> Auto-Owners ceased all further litigation preparation, and has been forced to redirect its resources toward enforcing the settlement. This included substantial time and expense addressing Ms. Kane's belated and highly questionable concerns with the terms of the Release and Indemnity Agreement, engaging in numerous emails, telephone calls, reviewing the settlement documents, conferring with Auto-Owners, and preparing for and attending two Status Conferences, along with the extensive time invested into the instant motion.

(DN 47-1, p. 17). These efforts and expenses are certainly a significant inconvenience to Auto-Owners; however, Auto-Owners has not been prejudiced in its ability to defend the action in the absence of a settlement. The time and expense Auto-Owners has incurred has not been because it was under the belief that the case had been settled and acted accordingly to its detriment. To the contrary, the time and expense invested has been directed to its efforts to obtain enforcement of

7

the settlement. This does not rise to the level of substantial adverse effect necessary to override the general doctrine that an attorney must have actual authority to agree to a settlement. *See, e.g. Cisney,* 2020 Ky. App. Unpub. LEXIS 248 (announcing settlement during trial and terminating trial proceedings constituted sufficient adverse effect); *McKinney v. Ky. Neighborhood Bank*, No. 2019-CA-1525-MR, 2020 Ky. App. Unpub. LEXIS 773, at *22-23 (Ky. App. 2020) (dismissal of criminal charges with prejudice as part of settlement constituted sufficient adverse effect); *Key Star Capital Fund, L.P. v. HRD, LLC,* No. 2018-CA-001452-MR, 2019 Ky. App. Unpub. LEXIS 686, at *20-21 (expending $60,000 in property improvements in reliance on settlement agreement constituted sufficient adverse effect).

Auto-Owners notes that it is now caught in the middle between the two estates: one of which wishes to go forward with settlement and the other does not. It is clear from the correspondence between the attorneys that Auto-Owners' offer of settlement was conditional on acceptance by both estates: "After careful consideration and consultation with my client, I have been authorized to extend a global settlement offer to resolve all claims of both estates in the amount of $268,145.55." (DN 47-4, p. 3). Joint acceptance of the settlement offer was therefore a condition precedent to finalizing the contract with either estate. "A condition precedent is defined as '[a]n act or event, other than the lapse of time, that must exist or occur before a duty to perform something promised arises.' Kentucky law clearly holds that if a condition precedent is not satisfied, the contract in question is not enforceable." *4588, LLC v. Lex Alexandria Holdings*, No. 2022-CA-0847-MR, 2023 Ky. App. Unpub. LEXIS 331, at *12 (Ky. App. May 26, 2023) (citation modified). Thus, Auto-Owners is not obligated to pay anything to Mrs. Eckert's estate even though it has agreed to the settlement offer, and is thus not adversely effected in that regard by Mr. Eckert's estate's refusal to agree.

**WHEREFORE**, the undersigned **RECOMMENDS** that the motion of Defendant Auto-Owners Insurance Company to enforce settlement, DN 47, be **DENIED**. The undersigned further **RECOMMENDS** that this action be restored to the active docket and the parties directed to tender an agreed scheduling order within ten days of the Court's ruling on this recommended disposition.

H. Brent Brennenstuhl
United States Magistrate Judge

July 10, 2025

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed, or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), aff'd, 474 U.S. 140 (1985).

H. Brent Brennenstuhl
United States Magistrate Judge

July 10, 2025

Copies to: Counsel of Record